UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ZONGBO ZHU,

                        Petitioner,

               -against-

KENNETH GENALO, Director of ICE New York City Field Office, KRISTI NOEM, in her official capacity as Secretary of the U.S. Department of Homeland Security, and PAMELA BONDI, in her official capacity as U.S. Attorney General,

                      Respondents.

Case No. 1:25-cv-06523 (JLR)

**<u>OPINION AND ORDER</u>**

---

JENNIFER L. ROCHON, United States District Judge:

On August 6, 2025, the Department of U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner Zongbo Zhu ("Zhu" or "Petitioner"), a 67-year-old native of China, at his home in Staten Island, New York.  Dkt. 2 ("Pet.") ¶¶ 8, 13.  ICE then detained Petitioner at 26 Federal Plaza, New York, New York.  Pet. ¶ 14.  On August 7, 2025, Petitioner filed the instant petition for a writ of habeas corpus challenging his detention under 28 U.S.C. § 2241.  *See generally* Pet.  Specifically, Petitioner asks this Court to declare his continued detention unlawful and a violation of the Fifth Amendment's Due Process Clause, to order Petitioner's immediate release, and to order Respondents Kenneth Genalo, Kristi Noem, and Pamela Bondi (collectively, the "Government") to show cause why Petitioner is being detained.  *See id.* at 8.  On August 11, 2025, the Court issued an Order to Show Cause, directed the Government to respond by August 15, 2025, and restrained the Government from transferring Petitioner outside of the Southern District of New York.  Dkt. 3.  The Court then held a hearing on the petition on August 20, 2025.  *Id.*

For the reasons that follow, the Court GRANTS the Petition and orders Petitioner to be released from custody.

## BACKGROUND

Petitioner is a 67-year-old native of China who entered the United States on March 12, 2000. Pet. ¶¶ 8-9. He filed an application for asylum in December 2000. *Id.* ¶ 9; *see* Dkt. 9-3 at 4. On February 21, 2001, U.S. Citizenship and Immigration Services ("USCIS") served Petitioner with a Notice to Appear ("NTA") that charged him with being removable pursuant to section 212(a)(6)(A)(i) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1182(a)(6)(A)(i), on the ground that he was a noncitizen present in the United States without being admitted or paroled. *Id.* ¶ 9; Dkt. 9-1 ("NTA"); Dkt. 8 ("Mascia Decl.") ¶ 4. The NTA was filed with the Immigration Court in New York, New York, thereby commencing removal proceedings against Petitioner. Mascia Decl. ¶ 4. An immigration judge denied Petitioner's asylum application and ordered him removed on November 25, 2002. Pet. ¶ 9; Dkt. 9-2 at 3. Petitioner timely appealed to the Board of Immigration Appeals ("BIA"); on February 23, 2004, the BIA affirmed the immigration judge's decision, and ordered him removed to China. Pet. ¶ 10; Dkt. 9-3 at 13.

On June 11, 2018, ICE took Petitioner into custody for the purpose of executing his final order of removal. Mascia Decl. ¶ 8. More than six months later, on December 14, 2018, ICE released Petitioner from custody on an Order of Supervision because it was unable to obtain a travel document to effectuate Petitioner's removal to China, as China was unwilling to repatriate its citizens. Mascia Decl. ¶ 9; Dkt. 8-4 ("Order of Supervision") at 3. Petitioner reported as requested through August 2024 by periodically reporting to his Deportation Officer at 26 Federal Plaza, New York, New York. Pet. ¶ 12; *see also* Order of Supervision at 2-3.

On August 6, 2025, Homeland Security Investigations agents encountered Petitioner during a field operation outside his residence in Staten Island. Mascia Decl. ¶ 10. The agents

identified themselves as Special Agents from Homeland Security Investigations and asked Petitioner for identification. Mascia Decl. ¶ 10. They then took him into custody and transported him to 26 Federal Plaza, New York, New York, for processing. Mascia Decl. ¶ 10. Petitioner represents that his Order of Supervision was cancelled without notice or explanation. Dkt. 11 ("Reply") at 4. On August 7, 2025, Theodore Cox, Petitioner's attorney, sent an e-mail to ICE's New York City field office to ask why Petitioner was being detained. Dkt. 12 at 9. Mr. Cox never received a response. Pet. ¶ 16. The Government confirmed during the habeas hearing on August 20, 2025, that Petitioner was not provided with a Notice of Revocation of Release nor an interview to discuss why his supervision was being cancelled. On August 8, 2025, Petitioner was transported to the Metropolitan Detention Center ("MDC") in Brooklyn, New York, where he is currently being detained pending removal. Mascia Decl. ¶ 11.

The Government represents that since January 2025, China has accepted citizens who were removed from the United States and that ICE is currently working to obtain travel documents to effectuate Petitioner's removal to China, as he does not currently possess a valid Chinese passport. Mascia Decl. ¶¶ 12, 14. On August 15, 2025, ICE's New York City Field Office's Enforcement and Removal Operations sent a completed travel document request packet for Petitioner to ICE's headquarters in Washington, D.C., for submission to the Embassy of the People's Republic of China in Washington, D.C. Mascia Decl. ¶ 13. The Government represents that once it obtains travel documents, ICE will book Petitioner on the "earliest practicable commercial airline flight to China to effectuate his removal from the United States," Mascia Decl. ¶ 15, and that it is "unaware of any impediments to effectuating [Petitioner's] removal to China once it obtains travel documents," Mascia Decl. ¶ 16.

This case was assigned to the undersigned on August 11, 2025. The same day, the Court issued an Order to Show Cause, directed the Government to file a response, and ordered the parties to appear for a hearing on the petition on August 20, 2025. Dkt. 3. The Court also restrained the Government from transferring Petitioner out of the Southern District of New York. *Id.* On August 12, 2025, the Government informed the Court that it had transferred Petitioner to the Metropolitan Detention Center ("MDC") in Brooklyn in the Eastern District of New York on August 8, 2025, before the Court issued its order prohibiting transfer, and requested that the Court permit Petitioner to remain in detention at the MDC during the pendency of his habeas petition, a request to which Petitioner's counsel consented. Dkt. 6 at 1. The Court modified its order to permit Petitioner to remain at the MDC while it ruled on his petition. Dkt. 7.

The Government filed a return on the Order to Show Cause on August 15, 2025, as well as the Declaration of Jason Mascia and a brief in opposition. Dkt. 9; *see also* Mascia Decl.; Dkt. 10 ("Opp."). Petitioner filed his reply on August 18, 2025, along with the affidavit of Theodore Cox. *See generally* Reply; Dkt. 12. The Court held a hearing on the petition on August 20, 2025. On August 21, 2025, the Government submitted additional information at the Court's request. Dkt. 13.

## LEGAL STANDARDS

28 U.S.C. § 2241 permits district courts to grant the writ of habeas corpus if, among other things, the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *accord Kapoor v. DeMarco*, 132 F.4th 595, 606 (2d Cir. 2025). Habeas proceedings "remain available" under section 2241 "as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). In a section 2241 habeas petition, the petitioner "bears the burden

of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) (citing *Parke v. Raley*, 506 U.S. 20, 31 (1992)); *accord Dzhabrailov v. Decker*, No. 20-cv-03118 (PMH), 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020).

## DISCUSSION

Petitioner raises two challenges to his detention: first, that his detention violated the Due Process Clause's procedural due process guarantees because ICE did not follow the required processes and procedures to redetain him; and second, that his detention beyond six months violates the Due Process Clause under *Zadvydas v. Davis*, 533 U.S. 678 (2001) because his removal is not reasonably foreseeable. Before addressing the merits of Petitioner's claims, the Court briefly discusses jurisdiction, which Defendants do not contest.

### I.    Jurisdiction

The Court, mindful of its obligation to ensure that it has jurisdiction, begins by addressing two jurisdictional issues not raised by the parties before turning to whether Petitioner is entitled to relief.

First, the Court may consider the Petition even though Petitioner has now been transferred to the MDC, which is in the Eastern District of New York. In *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), the Supreme Court explained that "[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Id.* at 447. Here, jurisdiction in this District was proper at the outset, since Petitioner remained in this District until August 8, 2025, the day after the Petition was filed. The Court retains jurisdiction even though Petitioner is now detained in the MDC.

*Khalil v. Joyce*, 771 F. Supp. 3d 268 (S.D.N.Y. 2025), is instructive. While that case dealt with a somewhat different factual scenario, the *Khalil* court examined whether to transfer the case to the district where petitioner was detained when the petition was first filed — the District of New Jersey — or to the district where petitioner was then detained — the Western District of Louisiana. *Id.* at 289. Relying on *Padilla*, the court reasoned that since "at the time of the bringing of the action, habeas jurisdiction lies in only one district: the district of confinement," and "a prisoner's transfer after a petition is filed does not deprive a court that would otherwise have jurisdiction of the ability to adjudicate his petition," the District of New Jersey had jurisdiction over the petition. *Id.* (internal quotation marks and citation omitted). Thus, since jurisdiction was proper in this District at the time the Petition was filed, the Court retains jurisdiction even though Petitioner is now detained in the Eastern District of New York.

Second, the Court may consider the constitutional challenges raised in the petition, as they do not run afoul of 8 U.S.C. § 1252's jurisdiction-stripping clauses. Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). However, section 1252(g)'s "bar on jurisdiction is 'narrow[],'" *Öztürk v. Hyde*, 136 F.4th 382, 396 (2d Cir. 2025) (alteration in original) (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999)), and "does not preclude jurisdiction over the challenges to the legality of [a noncitizen's] detention," *id.* at 397 (alteration in original) (quoting *Kong v. United States*, 62 F.4th 608, 609 (1st Cir. 2023)). Thus, "[e]ven though, '[i]n a but-for sense,' a claim of unlawful detention might arise from the government's decision to commence proceedings, adjudicate a case, or execute a removal, challenges to unlawful

detention 'do not "arise from" the government's decision to "execute removal orders" within the meaning of § 1252(g) simply because the claims relate to that discretionary, prosecutorial decision.'" *Id.* (second alteration in original) (quoting *Kong*, 62 F.4th at 613).  Here, Petitioner's claims are collateral to the Government's decision to execute the final order of removal, and instead involve whether the Government complied with its own revocation procedures and whether the length of his detention after the removal period is constitutional. *See Ceesay v. Kurzdorfer*, --- F. Supp. 3d --- , 2025 WL 1284720, at *8 (W.D.N.Y. May 2, 2025) (explaining that "district courts . . . have distinguished between challenges to ICE's discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not"); *Chavez Barrios v. Ripa*, No. 25-cv-22644, 2025 WL 2280485, at *5 (S.D. Fla. Aug. 8, 2025) (similar).  As a result, the Court's jurisdiction is not barred by section 1252(g).

The Government's citation to *Lin v. Borgen*, No. 25-cv-05618 (MMG), 2025 WL 2158874 (S.D.N.Y. July 30, 2025), albeit in another context, is inapposite.  In that case, the petitioner acknowledged that ICE had discretion to revoke his order of supervised release and detain him to effectuate his removal, but challenged ICE's exercise of that discretion in light of his applications for adjustments to his immigration status.  *Id.* at *3-4.  The court concluded that it lacked jurisdiction over the petition because petitioner's claim "sound[ed] as a request for judicial review of a question of law with respect to ICE's removal authority," *id.* at *4, and because the petitioner had "no apparent cognizable interest . . . in an entirely discretionary decision by USCIS as to the final disposition of his" application for adjustment of his immigration status, *id.* at *5.  Here, by contrast, Petitioner does not challenge ICE's authority to remove him, or its discretion to revoke his order of supervision; rather, he challenges whether ICE followed the requisite procedures and processes in revoking his supervision and

redetaining him. *See Torres-Jurado v. Biden*, No. 19-cv-03595 (AT), 2023 WL 7130898, at *2 (S.D.N.Y. Oct. 29, 2023) ("Courts can review 'how' [d]efendants exercise their discretion because such a claim does not ask 'why the Secretary chose to execute the removal order' but rather 'whether the way [defendants] acted accords with the Constitution and the laws of this country.'" (quoting *You Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451, 457 (S.D.N.Y. 2018))). For that reason, section 1252(g) does not preclude the Court's exercise of jurisdiction.

## II.    Procedural Due Process

Petitioner first claims that ICE officials detained him without providing him with notice or an explanation for his detention, as required by ICE's regulations and due process protections. Pet. ¶ 16; Reply at 4.

### A.  Legal Principles

8 U.S.C. § 1231 governs the arrest and detention of noncitizens who have been ordered removed.  It provides for mandatory detention during the 90-day removal period.  *See* 8 U.S.C. § 1231(a)(1)(a); *Godfrey v. Ball*, No. 23-7104, 2024 WL 4471571, at *2 (2d Cir. Oct. 11, 2024) (summary order).  The removal period begins on the latest of three dates set forth in section 1231, including, as relevant here, "[t]he date the order of removal becomes administratively final."  8 U.S.C. § 1231(a)(1)(B)(i).  After the 90-day removal period expires, section 1231(a)(6) authorizes the detention of three classes of persons "beyond the removal period": noncitizens who are (1) inadmissible, (2) removable as the result of violations of certain status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy, or (3) determined by the Attorney General to be a risk to the community, or to be unlikely to comply with the order of removal.  *Id.* § 1231(a)(6); *see id.* § 1227(a)(1)(C), (a)(2), (a)(4).  If the noncitizen is not detained pursuant to section 1231(a)(6) after the 90-day removal period and is not removed, section 1231(a)(3) provides that "the

[noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." *Id.* § 1231(a)(3).

The regulation that appears to be applicable here — and that the Government has briefed — is 8 C.F.R. § 241.4, which applies to the "Continued detention of inadmissible, criminal, and other aliens beyond the removal period." Section 241.4 applies to custody determinations for the noncitizens specified in section 1231(a)(6), *see* 8 C.F.R. § 241.4(a), and authorizes the revocation of an order of supervision to enforce a removal order, subject to certain procedures, *see id.* § 241.4(*l*).[1]

**B.  Analysis**

The Government argues that Petitioner's due process rights were not implicated by the revocation of his order of supervision because ICE has discretion to revoke orders of supervision and section 241.4 did not require notice or an interview when revoking Petitioner's release. Opp. at 5, 7. The Court does not agree.

*1.  Petitioner's Liberty Interest*

Contrary to the Government's assertions, Petitioner's liberty interests are implicated by his redetention even if ICE has discretion to revoke his supervision. The Supreme Court has emphasized that "[f]reedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Because "[t]he Fifth Amendment entitles all 'persons' to due process of law . . . the Due Process Clause covers noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020). Thus, Petitioner's argument that he was detained without notice

---

[1] To avoid confusion between the letter "l" and the number "1" in Times New Roman, the Court has italicized "*l*" throughout when referring to this paragraph of section 241.4.

or explanation as required by regulation, Reply at 4, involves Petitioner's protected interest in his continued liberty.

Petitioner does not challenge ICE's general discretionary *authority* to revoke his release; rather, he challenges ICE's revocation of his release and detention without providing the required notice and an opportunity to be heard. Such claims therefore implicate the Due Process Clause. *See Zadvydas*, 533 U.S. at 690; *Rombot v. Souza*, 296 F. Supp. 3d 383, 389 (D. Mass. 2017) (explaining that while ICE enjoys significant discretion to revoke a noncitizen's release, it "still must follow its own regulations[ and] procedures" when it deprives a noncitizen of his liberty); *Guillermo M.R. v. Kaiser*, --- F. Supp. 3d ---, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (explaining, in the context of individual released from immigration detention during removal proceedings, that "individuals conditionally released from detention have a protected interest in their 'continued liberty'"); *Lopez Benitez v. Francis*, --- F. Supp. 3d ---, 2025 WL 2371588, at *2, *9 (S.D.N.Y. Aug. 13, 2025) (petitioner, arrested during removal proceedings, challenged discretionary redetention; court emphasized that his due process claim "invoke[d] 'the most significant liberty interest there is — the interest in being free from imprisonment,'" and that "[a] person's liberty cannot be abridged without 'adequate procedural protections'" (first quoting *Velasco Lopez*, 978 F.3d at 851; and then quoting *Zadvydas*, 533 U.S. at 690); *cf. Morrisey v. Brewer*, 408 U.S. 471, 482 (1972) ("[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others.").

The cases that the Government relies on in support of its argument that Petitioner has no procedural due process claim concern inapposite circumstances where a petitioner asserts that they have a right to relief that is otherwise discretionary, such as cancellation of removal.

*See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (plaintiff had no liberty or property right in police enforcement of a discretionary restraining order); *Yuen Jin v. Mukasey*, 538 F.3d 143, 156-57 (2d Cir. 2008) (noncitizen already adjudicated removed and ordered deported did not have a liberty or property interest in a discretionary grant of asylum); *Rojas-Reyes v. INS*, 235 F.3d 115, 125-26 (2d Cir. 2000) (noncitizen did not have constitutional right to be considered for the discretionary relief of cancellation of removal); *Smith v. Ashcroft*, 295 F.3d 425, 430 (4th Cir. 2002) (explaining that "the discretionary right to suspension of deportation does not give rise to a liberty or property interest protected by the Due Process Clause"); *Appiah v. U.S. INS*, 202 F.3d 704, 709 (4th Cir. 2000) (similar); *Matias v. Sessions*, 871 F.3d 65, 72 (1st Cir. 2018) (petitioner lacked cognizable liberty interest where he sought only discretionary relief from the BIA, and thus could not state a due process claim); *Assaad v. Ashcroft*, 378 F.3d 471, 475-76 (5th Cir. 2004) (similar); *Oguejiofor v. Att'y Gen. of U.S.*, 277 F.3d 1305, 1309 (11th Cir. 2002) (similar); *Ashki v. INS*, 233 F.3d 913, 921 (6th Cir. 2000) (similar).  Here, however, Petitioner is not claiming that he has a right to a continued Order of Supervision, but instead that he has a right not to be redetained without appropriate process.

### 2.  Lawfulness of Petitioner's Redetention

Petitioner argues that his redetention was unlawful because ICE did not provide him with notice or an explanation, as required by its regulations.  Reply at 4.  At the hearing, the Government agreed that Petitioner has a due process right to be afforded the procedures set forth in 8 C.F.R. § 241.4 in connection with the revocation of his supervised release, and further acknowledged that Petitioner did not receive notice of the revocation of his release or an interview.  However, it is the Government's position that Petitioner was not entitled to notice or an informal interview because 8 C.F.R. § 241.4(*l*)(2) does not require notice or an

interview for noncitizens like Petitioner who are redetained to effectuate their removal, pursuant to ICE's discretion. The Court does not agree.

8 C.F.R. § 241.4 sets forth various procedures for the "[c]ontinued detention of inadmissible, criminal, and other aliens beyond the removal period," including, as relevant here, procedures for both release and the revocation of release. 8 C.F.R. § 241.4(d), (*l*). Paragraph (d)(1) permits certain designated officials to "release an alien if the alien demonstrates to the satisfaction of the Attorney General or her designee that his or her release will not pose a danger to the community or to the safety of other persons or to property or a significant risk of flight pending such alien's removal from the United States." *Id.* § 241.4(d)(1). It also requires "[a] copy of any decision . . . to release or to detain an alien to be provided to the detained alien." *Id.* § 241.4(d). Paragraph (*l*) concerns revocation of that supervised release. Under paragraph (*l*)(2), "[t]he Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody" a noncitizen who was previously released. *Id.* § 241.4(*l*)(2). Pursuant to paragraph (*l*)(2), a noncitizen's release "may be" revoked if, "in the opinion of the revoking official,":

> (i) The purposes of release have been served;
>
> (ii) The alien violates any condition of release;
>
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
>
> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

*Id.* Paragraph (*l*)(1), entitled "Violation of conditions of release," provides that "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release or parole," as well as "an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the

notification." *Id.* § 241.4(*l*)(1). Paragraph (*l*)(3) discusses "[t]iming of review when release is revoked." *Id.* § 241.4(*l*)(3).

The Government argues that because ICE's authority to revoke Petitioner's release to enforce a removal order under paragraph (*l*)(2) is discretionary and does not require notice or an interview, it was not required to provide notice or an informal interview to Petitioner. Therefore, according to the Government, ICE did not redetain him in violation of the regulations or the Due Process Clause. This argument is unpersuasive for several reasons.

While not a model of clarity, the text of 8 U.S.C. § 241.4(*l*) is inconsistent with the Government's argument that Petitioner was not entitled to notice or an interview. The Government concedes that ICE must follow certain procedures if it revokes a noncitizen's release pursuant to paragraph (*l*)(1) for violation of a condition of release, but argues that those same procedures do not apply to noncitizens whose release is revoked pursuant to paragraph (*l*)(2) because paragraph (*l*)(2) provides distinct, discretionary avenues for the revocation of release. Opp. at 8. But this argument is in significant tension with the fact that paragraph (*l*)(2) also covers circumstances where a violation of a condition of supervised release is the basis for revoking a noncitizen's release. *See* 8 C.F.R. § 241.4(*l*)(2)(ii). This overlap belies the Government's argument that these are two separate processes, and suggests that paragraph (*l*) sets forth a unified set of procedures for the revocation of removal. *See, e.g.*, *M.S.L. v. Bostock*, No. 25-cv-01204, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025) (Notice of Revocation stated that a "determination was made pursuant to 8 C.F.R. [§] 241.4(*l*)(2)(ii) that [p]etitioner had violated the conditions of release," rather than citing to 8 C.F.R. § 241.4(*l*)(1) (citation omitted)).

The Government has not cited to a single case in support of its interpretation of 8 C.F.R. § 241.4(*l*), either in its papers or during the habeas hearing, and courts have

13

consistently held otherwise.  Recently, in *Ceesay v. Kurzdorfer*, the government similarly

argued that "under section 241.4, an informal interview is required only if supervision is

revoked based on a violation of a condition of release."  2025 WL 1284720, at *18.  The court

examined the regulations and concluded that it "does not make sense" that paragraphs (*l*)(1)

and (*l*)(2) "provide two entirely different tracks for revocation" because paragraph (*l*)(2)(ii)

includes violations of supervised release "as one of the possible reasons for revoking release."

*Id.* at *18 n.25.  The *Ceesay* court rejected the government's proposed interpretation of

paragraph (*l*)(2) and held that, consistent with the weight of authority, the procedures of notice

and an interview were required "regardless of the reason for the revocation."  *Id.* at *18

("[T]he government does not cite a single case holding that an informal interview is not

required when release is revoked for a reason other than a violation.").

   Similarly, in *Perez-Escobar v. Moniz*, --- F. Supp. 3d ---, 2025 WL 2084102 (D. Mass.

July 24, 2025), the petitioner, as here, had been ordered removed more than twenty years

before the petition was filed, but had been released subject to conditions for more than five

years.  *Id.* at *1.  The petitioner complied with his conditions of release but was detained

without notice during a check-in at an ICE field office.  *Id.*  He received a notice of revocation

of release the following day, which "asserted that 'there [was] a significant likelihood of

removal in the reasonably foreseeable future,' that 'the purpose of [petitioner's] release ha[d]

been served,' and that 'it [was] appropriate to enforce the removal order,'" but "[did] not

identify any specific changed circumstances to support these assertions."  *Id.* at *2 (citation

omitted).  There was no assertion that the petitioner had violated a condition of release.

Notwithstanding that, the court held that when the Department of Homeland Security revokes

the release of a noncitizen to enforce an order of removal, 8 C.F.R. § 241.4(*l*) requires the

noncitizen to be notified of the reasons for revocation under paragraph (*l*)(1), *id.* at *1-2, and

14

that such notice must provide "adequate notice of the basis for the revocation decision such that he [can] meaningfully respond at the post-detention 'informal interview,'" *id.* at *2. *See also Zhen Yi Mei v. Doe*, No. 25-cv-01507, 2025 WL 2258586, at *10 n.19 (N.D. Ohio Aug. 7, 2025) (observing, in case of petitioner whose release was revoked pursuant to paragraph (*l*)(2)(iii), that "there are certain procedural requirements when revoking supervision pursuant to § 241.4," including "notif[ying] [her] of the reasons for [the] revocation [and] . . . her return to [ICE] custody," and "afford[ing] her an opportunity to respond to the reasons for revocation stated in the notification," which "precedes a full custody review conducted 'approximately three months after release is revoked'" (alterations and omission in original) (quoting *Jimenez v. Cronen*, 317 F. Supp. 3d 626, 652 (D. Mass. 2018))).

These recent cases are not outliers. In *Rombot v. Souza*, the government revoked petitioner's supervised release to enforce his removal order, citing "a significant likelihood of removal in the foreseeable future." 296 F. Supp. 3d at 385. The court concluded that section 241.4 required ICE to provide an informal interview promptly, and that it had violated its own procedures by failing to do so. *Id.* at 387-88. In *You Xiu Qing v. Nielsen*, the court rejected the government's argument that section 241.4 permitted it to revoke the petitioner's release without "providing him with notice and an informal interview." 321 F. Supp. 3d at 463; *see also Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1019 (2025) (statement of Sotomayor, J.) (emphasizing that 8.C.F.R. § 241.4(*l*) required notice and an informal interview to revoke conditional release); *M.Q. v. United States*, 776 F. Supp. 3d 180, 187, 190, 190 n.1 (S.D.N.Y. 2025) (paragraph 241.4(*l*) required ICE to provide petitioner who had not violated conditions

of release with notice and an informal interview).[2]  These cases support the Court's

conclusion that redetention under section 241.4 requires notice and an informal interview,

even when a noncitizen is detained because it is "appropriate to enforce a removal order"

under paragraph (*l*)(2)(iii).

　　The Government's interpretation of paragraph 241.4(*l*) would also result in

imbalanced procedural safeguards for noncitizens redetained under section 241.4.

Specifically, in the Government's view, noncitizens who are redetained because they violated

the terms of supervision, but not others, would be entitled to notice and a prompt interview.

Thus, "a noncitizen suspected of violating a condition of release gets more process than a

noncitizen — like [Petitioner] — who has met his obligations to report."  *Ceesay*, 2025 WL

1284720, at *19.  When pressed at the hearing, the Government had no explanation for this

discrepancy except to repeat its position that the difference exists because revocation under

paragraph (*l*)(2) is discretionary.  But, as explained above, revocation because a noncitizen

violates a condition of release is *also* discretionary, a conclusion reinforced by paragraph

(*l*)(1)'s use of "may" and paragraph (*l*)(2)'s inclusion of violations of a condition of release as

a reason that an appropriate official may revoke release in their discretion.  *See* 8 C.F.R.

§ 241.4(*l*)(1) ("Any [noncitizen] described in paragraph (a) or (b)(1) of this section who has

been released under an order of supervision or other conditions of release who violates the

---

[2] The Court's independent review uncovered a single out-of-district case, *Chavez Barrios v. Ripa*, which adopted the Government's position that a noncitizen is not entitled to notice or an interview under paragraph 241.4(*l*)(2).  2025 WL 2280485, at *6.  However, that decision did not analyze the interplay between paragraphs (*l*)(1) and (*l*)(2) and instead explained that it "d[id] not *appear* that [p]etitioner was entitled [to] notice or an informal interview under § 241.4" and that, in any event, the petitioner "was afforded notice of the revocation and an informal interview."  *Id.* at *6 (emphasis added).  As such, this decision does not sway the Court's conclusion that paragraph (*l*)(2) requires notice and an interview, particularly in light of the weight of authority contrary to *Chavez Barrios*.

conditions of release *may* be returned to custody." (emphasis added)); *id.* § 241.4(*l*)(2)

("Release may be revoked *in the exercise of discretion* when, in the opinion of the revoking

official . . . . [t]he [noncitizen] violates any condition of release[.]" (emphasis added)).  Thus,

the fact that paragraph (*l*)(2) sets forth a discretionary process does not convince the Court

that such discretion is unfettered.

   The Court's conclusion is bolstered by the fact that it appears, based on the Court's

review of other cases involving the redetention of a noncitizen to effectuate removal pursuant

to 8 C.F.R. § 241.4(*l*)(2), that in the usual course ICE provides Notices of Revocation stating

that the noncitizen will "promptly be afforded an informal interview," suggesting that ICE

understands the regulation to require the same.  *See*, *e.g.*, *Chavez Barrios*, 2025 WL 2280485,

at *2 (upon detention of noncitizen whose supervision was revoked because travel documents

were obtained to effectuate removal, petitioner received a Notice of Revocation of Release

that stated the reasons for revocation and that petitioner would "promptly be afforded an

informal interview"); *Grigorian v. Bondi*, No. 25-cv-22914, 2025 WL 1895479, at *2 (S.D.

Fla. July 8, 2025) (similar, and there was "no indication in the record that [petitioner] at any

time failed to comply with his Order of Supervision"); *Tanha v. Warden, Baltimore Detention

Facility*, No. 25-cv-02121, 2025 WL 2062181, at *1-2 (D. Md. July 22, 2025) (same); *Medina

v. Noem*, --- F. Supp. 3d ---, 2025 WL 2306274, at *2 (D. Md. Aug. 11, 2025) (similar, and

notice of revocation stated that reason for revocation was that "ICE ha[d] determined that

[petitioner] can be expeditiously removed from the United States pursuant to the outstanding

order of removal against [him]"); *Tran v. Baker*, No. 25-cv-01598, 2025 WL 2085020, at *1-2

(D. Md. July 24, 2025) (similar); *Perez-Escobar*, 2025 WL 2084102, at *1 (similar).

   Notification of the reasons for Petitioner's redetention is also required under 8 C.F.R.

§ 241.4(d), which provides that "[a] copy of any decision ... to detain an alien shall be

provided to the detained alien" and a decision to retain custody must "set forth the reasons" for that detention.  8 C.F.R. § 241.4(d).  The failure to provide Petitioner with such notice thwarts his ability to contest the revocation.  *See Santamaria Orellana v. Baker*, No. 25-cv-01788, 2025 WL 2444087, at *6-8 (D. Md. Aug. 25, 2025) (holding that ICE violated 8 C.F.R. § 241.4(d) by failing to provide noncitizen whose order of supervision was revoked with a notice or any written record as to the basis for the revocation of his release, which in turn violated his due process rights).

ICE's failure to provide Petitioner with a Notice of Revocation or otherwise provide records documenting the decision to redetain him also does not establish that Petitioner's detention was in accordance with 8 C.F.R § 241.4(*l*)(2), which limits the officials with the authority to revoke release and the reasons for revocation.  Specifically, 8 C.F.R. § 241.4(*l*)(2) provides that the "Executive Associate Commissioner" and "district director" have authority to revoke release of a noncitizen "previously approved for release under the procedures in this section."  Without the provision of a Notice of Revocation to Petitioner, any notification of the reasons for the revocation of his release, or any information on the identity or position of the ICE official who authorized that revocation, there is no evidence that the officials designated by paragraph 241.4(*l*)(2) made the decision to revoke Petitioner's release prior to his detention.  Instead, the only evidence presented by the Government was that Special Agents from Homeland Security Investigations "encountered Zhu during a field operation outside his residence," "asked Zhu for identification," and took him into custody, Mascia Decl. ¶ 10, and that ICE is now "working to obtain travel documents" to effectuate Petitioner's removal, *id.* ¶ 12.  Thus, there is no basis to find that ICE complied with 8 C.F.R. § 241.4(*l*)(2).  *See Santamaria Orellana,* 2025 WL 2444087, at *6-8 (holding that ICE violated requirement that decision to revoke release be made by specified individuals where

there was no evidence that officials designated by paragraph (*l*)(2) made the decision to revoke petitioner's release, and emphasizing that this case involved "an even more significant due process violation" than in *Rombot* and *Ceesay* because, as here, there was "absolutely no record of the decision to revoke [petitioner's] release, much less one that was presented to him"); *Rombot*, 296 F. Supp. 3d at 387 (ICE violated its own regulations where the record did not show that the revoking official "ever made the threshold determination that [petitioner's] 'revocation [was] in the public interest'" (second alteration in original) (quoting 8 C.F.R. § 241.4(*l*)(2))); *Torres-Jurado*, 2023 WL 7130898, at *4 (revocation of supervision was unlawful where ICE failed to provide "documentation" of the reasons for revocation and stated only that "a travel document appears forthcoming"); *Ceesay*, 2025 WL 1284720, at *17 (revocation of suspension was unlawful where the revoking official lacked authority to revoke the petitioner's release); *M.S.L.*, 2025 WL 2430267, at *10 (same, and concluding that petitioner was "entitled to release on that basis alone"); *cf. Westley v. Harper*, No. 25-cv-00229, 2025 WL 592788, at *7-8 (E.D. La. Feb. 24, 2025) (rejecting argument that ICE failed to follow section 241.4(*l*) in revoking the order of supervised release, since ICE demonstrated that the "appropriate officers were involved," that revocation was in the public interest, and that paragraphs (*l*)(2)(i) and (iii) were satisfied).[3]

---

[3] The Court also notes that the record is not clear about whether Petitioner was released in 2018 pursuant to 8 C.F.R. § 241.4 or § 241.13. Section 241.4 sets forth procedures for the release of noncitizens detained beyond the removal period, 8 C.F.R. § 241.4(a), (d), while section 241.13 addresses noncitizens "subject to a final order of removal and [who] are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, where the [*noncitizen*] *has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future*," *id.* § 241.13(a) (emphasis added). If Petitioner's release was pursuant to section 241.13, then his redetention plainly violated section 241.13's procedural requirements, which mandate that "[u]pon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release" and that ICE

ICE's failure to follow its own regulations and provide Petitioner with notice or an interview violated Petitioner's procedural due process rights.  At the hearing, the Government admitted that Petitioner has a due process right to the procedures set forth in Section 241.4, though it contested which procedures applied to him.  Moreover, "[a] person's liberty cannot be abridged without 'adequate procedural protections.'"  *Lopez Benitez*, 2025 WL 2371588, at *9 (quoting *Zadvydas*, 533 U.S. at 690); *see also Black v. Decker*, 103 F.4th 133, 151 (2d Cir. 2024) (observing that "[c]ase after case instructs us that in this country liberty is the norm and detention 'is the carefully limited exception'" (alteration in original) (quoting *Velasco Lopez*, 978 F.3d at 851)).  "[D]ue process requires that 'we have dealt fairly when we are depriving a person of the most essential aspects of life, liberty[,] and family.'"  *Torres-Jurado*, 2023 WL 7130898, at *4 (quoting *Ragbir v. Sessions*, 2018 WL 623557, at *2 (S.D.N.Y. Jan. 29, 2018), *vacated and remanded on other grounds sub nom. Ragbir v. Barr*, No. 18-1595, 2019 WL 6826008 (2d Cir. July 30, 2019) (summary order)).  Here, Petitioner received *no* process before being redetained, in violation of ICE's own regulations and the Due Process Clause.  *See Rombot*, 296 F. Supp. 3d at 388 (emphasizing that "ICE, like any agency, 'has the duty to follow its own federal regulations,'" and holding that ICE's failure to follow the procedures set forth in 8 C.F.R. § 241.4(*l*) violated the Due Process Clause, since those regulations were "promulgated to protect a fundamental right derived from the Constitution" (citations omitted)); *Ceesay*, 2025 WL 1284720, at *20-21 (holding that ICE violated petitioner's due process rights in deciding to redetain petitioner by failing to follow the procedures set forth in

---

will "conduct an initial informal interview promptly . . . to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification," *id.* § 241.13(i). *See, e.g.*, *Hoac v. Becerra*, No. 25-cv-01740, 2025 WL 1993771, at *1 (E.D. Cal. July 16, 2025) (ICE violated section 241.13's requirements by failing to "timely provide[] him with an initial interview or an opportunity to respond to the purported reasons for revocation"); *Liu v. Carter*, No. 25-cv-03036, 2025 WL 1696526, at *2 (D. Kan. June 17, 2025) (similar).

section 241.4, including providing petitioner an interview); *cf. Torres-Jurado*, 2023 WL
7130898, at *4 (explaining that "[d]ue process, at a minimum, 'requires the Government to
afford notice of any action against a noncitizen' and 'an opportunity for the noncitizen to be
heard,'" and holding that revocation without the process set forth in 8 C.F.R. §§ 241.4(*l*)(1)-
(2) was unlawful and violated procedural due process (alterations adopted) (quoting *Ying
Fong v. Ashcroft*, 317 F. Supp. 2d 398, 403 (S.D.N.Y. 2004))). The Government has
significant discretion to enforce the immigration laws and, indeed, to revoke Petitioner's
Order of Supervision; Petitioner does not contest this. But it must do so consistent with the
requirements of its own regulations and the Due Process Clause. *Cf. Lopez Benitez*, 2025 WL
2371588, at *15 ("[T]he 'suggestion that government agents may sweep up any person they
wish, for [no] reason [whatsoever] . . . so long as the person will, at some unknown point in
time, be allowed to ask some other official for his or her release offends the ordered system of
liberty that is the pillar of the Fifth Amendment.'" (second and third alteration and omission
in original) (quoting *Chipantiza-Sisalema v. Francis*, No. 25-cv-05528 (AT), 2025 WL
1927931, at *3 (S.D.N.Y. July 13, 2025))).[4]

---

[4] Even if the Court did not find that the relevant regulations required notice and an interview,
Petitioner would be entitled to release because he was not afforded the minimal due process
required by the Fifth Amendment. Courts in this Circuit apply the three-factor balancing test
set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), in determining the adequacy of process
in the civil immigration context. *See Velasco Lopez*, 978 F.3d at 851. Here, the private
interests at stake are significant and weigh in Petitioner's favor, since the private interest
affected is Petitioner's interest in being free from imprisonment, especially since he has not
violated any condition of his supervised release and was dutifully reporting under his
supervision requirements. Second, the "risk of an erroneous deprivation" and the "probable
value, if any, of additional or substitute procedural safeguards," *Mathews*, 424 U.S. at 335,
also weigh in Petitioner's favor, since "the almost nonexistent procedural protections"
provided to Petitioner "markedly increased the risk of an erroneous deprivation of [his]
private liberty interests," *Black*, 103 F.4th at 152, including whether the revocation
determination was made by an authorized person. Finally, the Government's interests,
presumably in effectively carrying out orders of removal, are legitimate, but would not be

As such, the Court will grant Petitioner's habeas petition in part and order his immediate release. Given his release at this time, the Court need not address whether Petitioner's redetention violates the *Zadvydas* standard based on the likelihood that Petitioner's removal is not reasonably foreseeable. *See, e.g.*, *Santamaria Orellana*, 2025 WL 2444087, at *8 (granting habeas petition of noncitizen whose order of supervision was revoked based on violations of process required by regulations and due process and therefore not reaching question of whether redetention was otherwise unlawful under *Zadvydas*).

## CONCLUSION

For the foregoing reasons, the Court GRANTS Petitioner's habeas petition in part. The Government is directed to transport Mr. Zhu (A-Number 078 731 357) back to the Southern District of New York by **August 27, 2025**; and immediately upon effectuating his transfer, to release Petitioner from custody; and further, to certify compliance with the Court's order by a filing on the docket no later than **August 28, 2025**.

Dated: August 26, 2025
       New York, New York

                                        SO ORDERED.

                                        *Jennifer Rochon*
                                        JENNIFER L. ROCHON
                                        United States District Judge

---

undercut by additional procedural safeguards as minimal as notice and an informal interview — a conclusion reinforced by the fact that the Government seems to provide these processes in the normal course when it redetains other noncitizens pursuant to 8 C.F.R § 241.4(*l*)(2), *see supra* p. 17-18. Thus, the Court concludes that Petitioner was entitled to at least notice and an informal interview in connection with his redetention.